# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| ABELINO RIVERA, Individually and for Others Similarly Situated<br><br>v.<br><br>CHSPSC, LLC d/b/a COMMUNITY HEALTH SYSTEMS | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.  Abelino Rivera (Rivera) brings this class and collective action to recover unpaid wages and other damages from CHSPSC, LLC d/b/a Community Health Systems (CHS).

2.  Rivera worked for CHS as a Respiratory Therapist at CHS's Mountainview Regional Medical Center in Las Cruces, New Mexico.

3.  Like the Putative Class Members (as defined below), Rivera regularly worked more than 40 hours in a workweek.

4.  But CHS does not pay them for all the hours they work.

5.  Instead, CHS automatically deducts 30 minutes a day from these employees' work time for so-called meal breaks.

6.  Rivera and the Putative Class Members are thus not paid for that time.

7.  But CHS fails to provide Rivera and the Putative Class Members with *bona fide* meal breaks.

8.  Instead, CHS requires Rivera and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9. CHS's auto-deduction policy violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) and the New Mexico Minimum Wage Act, NM STAT. § 50-4-20, *et seq.* (NMMWA) by depriving Rivera and the Putative Class Members of premium overtime wages for all overtime hours worked.

10. Further, in addition to excluding time Rivera and the Putative Class Members worked during their unpaid "meal breaks," CHS also paid these employees different hourly rates (or "shift differentials") and/or bonuses depending on what type of shifts they worked.

11. But CHS failed to include these shift differentials and bonuses in calculating Rivera and the Putative Class Members' regular rates of pay for overtime purposes.

12. CHS's shift differential and bonus pay scheme violates the FLSA and NMMWA by depriving Rivera and the Putative Class Members of overtime compensation at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over CHS with respect to this action because CHS conducts substantial business in New Mexico, including employing patient care workers, like Rivera and the Putative Class Members, in New Mexico.

16. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District. 28 U.S.C. § 1391(b)(2).

17. Specifically, Rivera and the Putative Class Members worked (and work) for CHS in New Mexico.

## THE PARTIES

18. Rivera worked for CHS as a Respiratory Therapist at CHS's Mountainview Regional Medical Center in Las Cruces, New Mexico from approximately February 2019 until February 2021.

19. Throughout his employment, CHS classified Rivera as non-exempt and paid him on an hourly basis.

20. But CHS subjected Rivera to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

21. Further, throughout his employment, CHS paid Rivera under its shift differential and bonus pay scheme, paying him different hourly rates and/or bonuses depending on what type of shift he worked.

22. But CHS failed to include these shift differentials and bonuses in calculating Rivera's regular rate of pay for overtime purposes.

23. Rivera's written consent is attached as **Exhibit 1**.

24. Rivera brings this action on behalf of himself and other similarly situated hourly, non-exempt CHS employees in New Mexico who (1) were subject to CHS's automatic meal break deduction policy and/or (2) were paid under CHS's shift differential and bonus pay scheme.

25. CHS uniformly requires these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

26. CHS uniformly pays these employees shift differentials and/or bonuses that CHS fails to include in calculating their regular rates of pay for overtime purposes.

27. Thus, CHS uniformly deprives these employees of overtime compensation at the proper premium rate for all overtime hours worked in violation of the FLSA and NMMWA.

28. The FLSA Collectives of similarly situated employees are defined as:

   **All hourly, non-exempt CHS employees in New Mexico who received an automatic meal period deduction at any time during the past 3 years ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective"); and**

   **All hourly, non-exempt CHS employees in New Mexico who received shift differentials and/or bonuses at any time during the past 3 years ("FLSA Shift Diff Collective Members" or "FLSA Shift Diff Collective").**

29. The FLSA Meal Break Collective Members and the FLSA Shift Diff Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collectives."

30. Rivera also seeks to represent such classes under the NMMWA pursuant to FED. R. CIV. P. 23.

31. The New Mexico Classes of similarly situated employees are defined as:

   **All hourly, non-exempt CHS employees who received an automatic meal period deduction while working in New Mexico at any time during the past 3 years ("New Mexico Meal Break Class Members" or "New Mexico Meal Break Class"); and**

   **All hourly, non-exempt CHS employees who received shift differentials and/or bonuses while working in New Mexico at any time during the past 3 years ("New Mexico Shift Diff Class Members" or "New Mexico Shift Diff Class").**

32. The New Mexico Meal Break Class Members and the New Mexico Shift Diff Class Members are collectively referred to as the "New Mexico Class Members" or "New Mexico Classes."

33. The FLSA Collective Members and New Mexico Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

34. CHS is a Delaware corporation that maintains its headquarters in Franklin, Tennessee.

35. CHS may be served with process by serving its registered agent: **Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808**.

**COVERAGE UNDER THE FLSA**

36. At all relevant times, CHS was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37. At all relevant times, CHS was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

38. At all relevant times, CHS was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, and personal protective equipment – that have been moved in or produced for commerce.

39. At all relevant times, CHS has had an annual gross volume of sales made, or business done, of not less than $500,000 each year.

40. At all relevant times, Rivera and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

41. CHS uniformly deducted 30 minutes/shift from Rivera and the FLSA Collective Members' wages for meal breaks, even when these employees did not actually receive bona fide, non-interrupted meal breaks.

42. As a result, CHS failed to pay Rivera and the FLSA Collective Members for this compensable work, including overtime wages, in violation of the FLSA.

43. CHS's automatic meal break deduction policy, which deprives Rivera and the FLSA Collective Members of overtime compensation for all overtime hours worked during the weeks in which these employees work over 40 hours, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

44. Further, CHS uniformly failed to include shift differential payments and bonuses Rivera and the FLSA Collective Members received in calculating these employees' regular rates of pay for overtime purposes.

45. As a result, CHS failed to pay Rivera and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

46. CHS's shift differential and bonus pay scheme, which deprives Rivera and the FLSA Collective Members of overtime compensation at the proper premium rate, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

47. CHS bills itself as "one of the nation's leading healthcare providers[,] [d]eveloping and operating healthcare delivery systems in 44 distinct markets across 15 states[,]"[1] including in New Mexico.

48. CHS employs patient care workers, including Rivera and the Putative Class Members, to work at its various healthcare facilities.

49. CHS uniformly classifies these employees as non-exempt and pays them on an hourly basis.

50. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

51. For example, Rivera worked for CHS as a Respiratory Therapist at CHS's Mountainview Regional Medical Center in Las Cruces, New Mexico from approximately February 2019 until February 2021.

---

[1] https://www.chs.net/ (last visited April 19, 2023).

52. As a Respiratory Therapist, Rivera's primary responsibilities include providing respiratory care services to CHS patients, such as ventilator management, airway management, breathing treatments, emergency treatments, NICU cases, and assisting doctors and other patient care staff.

53. Throughout his employment, CHS classified Rivera as non-exempt and paid him on an hourly basis.

54. Throughout his employment, CHS subjected Rivera to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

55. Throughout his employment, CHS paid Rivera differently hourly rates ("shift differentials") and/or bonuses depending on what type of shift he worked, but CHS failed to include these shift differential and bonuses in calculating Rivera's regular rate of pay for overtime purposes.

56. Rivera and the Putative Class Members performed their jobs under CHS's supervision, and using materials, equipment, and technology approved and supplied by CHS.

57. CHS requires Rivera and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

58. At the end of each pay period, Rivera and the Putative Class Members received wages from CHS that were determined by common systems and methods that CHS selected and controlled.

59. CHS requires its hourly, non-exempt employees, including Rivera and the Putative Class Members, to record their hours worked using CHS's timeclock system.

60. Further, CHS subjects its hourly, non-exempt employees, including Rivera and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

61. Specifically, CHS automatically deducts 30 minutes from Rivera's and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

62. But CHS fails to provide Rivera and the Putative Class Members with *bona fide* meal periods.

63. Instead, CHS requires Rivera and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

64. This unpaid time is compensable under the FLSA and/or the NMMWA because CHS knew, or should have known, that (1) Rivera and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 consecutive minutes.

65. CHS failed to exercise its duty to ensure Rivera and the Putative Class Members were not performing work that CHS did not want performed during their unpaid "meal breaks."

66. Despite accepting the benefits, CHS did not pay Rivera and the Putative Class Members for the compensable work they performed during their "meal breaks."

67. Thus, under CHS's uniform automatic meal break deduction policy, Rivera and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work in excess of 40 hours in violation of the FLSA and NMMWA.

68. CHS also subjects Rivera and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment to CHS's – not these employees' – primary benefit.

69. CHS's uniform rounding policy violates the FLSA and NMMWA by depriving Rivera and the Putative Class Members of overtime pay for all overtime hours worked because CHS fails to include all work time in these employees' total hours worked.

70. Further, CHS also paid Rivera and the Putative Class Members different hourly rates ("shift differentials") and/or bonuses depending on what type of shifts they worked.

71. But CHS failed to include these shift differentials and bonuses in calculating Rivera and the Putative Class Members' regular rates of pay for overtime purposes.

72. CHS's shift differential pay scheme violates the FLSA and NMMWA by failing to pay Rivera and the Putative Class Members overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

73. CHS knows Rivera and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because CHS expects and requires these employees to do so.

74. But CHS does not pay Rivera and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and NMMWA.

75. Rivera worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

76. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

77. Indeed, CHS typically schedules Rivera and the Putative Class Members to work 12- to 14-hour shifts for up to 6 days a week.

78. And Rivera and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and responsibilities.

79. As a result, Rivera and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

80. When Rivera and the Putative Class Members worked more than 40 hours in a workweek, CHS did not pay them 1.5 times their regular hourly rate – based on *all* renumeration received – for all overtime hours worked because CHS failed to include (1) time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek and (2) these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

81. CHS knew, or should have known, it was subject to the FLSA and NMMWA, including their respective overtime provisions.

82. CHS knew, or should have known, the FLSA and NMMWA require it to pay employees, including Rivera and the Putative Class Members, overtime compensation at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

83. CHS knew, or should have known, Rivera and the Putative Class Members worked more than 40 hours in a workweek.

84. CHS knew, or should have known, Rivera and the Putative Class Members regularly worked during their unpaid "meal breaks" because CHS expected and required them to do so.

85. CHS knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Rivera and the Putative Class Members of pay, including overtime compensation at the proper premium rates, for all hours worked in violation of the FLSA and NMMWA.

86. Nonetheless, CHS failed to pay Rivera and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours these employees worked.

87. CHS's failure to pay Rivera and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

88. Rivera brings his claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

89. The Putative Class Members were uniformly victimized by CHS's automatic meal break deduction policy and/or CHS's shift differential and bonus pay scheme, which are in willful violation of the FLSA and NMMWA.

90. Other Putative Class Members worked with Rivera and indicated they were paid in the same manner, performed similar work, and were subject to CHS's same illegal pay policies.

91. Based on his experiences with CHS, Rivera is aware CHS's illegal practices were imposed on the Putative Class Members.

92. The Putative Class Members are similarly situated in all relevant respects.

93. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

94. Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

95. Rather, the Putative Classes are held together by CHS's uniform automatic meal break deduction policy and/or CHS's uniform shift differential and bonus pay scheme that systematically deprived Rivera and the Putative Class Members of overtime pay at the proper premium rate for all overtime hours worked.

96. The Putative Class Members are similarly denied overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

97. The back wages owed to Rivera and the Putative Class Members will be calculated using the same records and using the same formula.

98. Rivera's experiences are therefore typical of the experiences of the Putative Class Members.

99. Rivera has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

100. Like each Putative Class Member, Rivera has an interest in obtaining the unpaid wages owed under federal and/or state law.

101. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

102. Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and CHS will reap the unjust benefits of violating the FLSA and NMMWA.

103. Further, even if some of the Putative Class Members could afford individual litigation against CHS, it would be unduly burdensome to the judicial system.

104. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

105. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

106. Among the common questions of law and fact are:

   a. Whether CHS engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NMMWA;

  b. Whether CHS's automatic meal break deduction policy deprived Rivera and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NMMWA;

  c. Whether CHS failed to pay Rivera and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks in violation of the FLSA and NMMWA;

  d. Whether CHS knew, or had reason to know, Rivera and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA and NMMWA;

  e. Whether CHS failed to include Rivera and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA and NMMWA;

  f. Whether CHS's violations of the FLSA and NMMWA resulted from a continuing course of conduct;

  g. Whether CHS's decision not to pay Rivera and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was made in good faith; and

  h. Whether CHS's violations of the FLSA and/or NMMWA were willful.

107. Rivera and the Putative Class Members sustained damages arising out of CHS's illegal and uniform employment policy.

108. Rivera knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

109. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to CHS's records, and there is no detraction from the common nucleus of liability facts.

110. Therefore, the issue of damages does not preclude class or collective treatment.

111. CHS is liable under the FLSA and NMMWA for failing to pay Rivera and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

112. Consistent with CHS's illegal automatic meal break deduction policy, Rivera and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

113. Consistent with CHS's illegal shift differential and bonus pay scheme, Rivera and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

114. As part of its regular business practices, CHS intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and NMMWA with respect to Rivera and the Putative Class Members.

115. CHS's illegal policies deprived Rivera and the Putative Class Members of overtime compensation at the proper premium rate for all overtime hours worked, which they are owed under federal and/or state law.

116. There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

117. This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

118. Those similarly situated employees are known to CHS, are readily identifiable, and can be located through CHS's records.

### FIRST CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVES)

119. Rivera realleges and incorporates all other paragraphs by reference.

120. Rivera brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

121. CHS violated, and is violating, the FLSA by failing to pay Rivera and the FLSA Collective Members overtime at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

122. Throughout the relevant period, CHS expected and required Rivera and the FLSA Collective Members to remain on-duty and be available to work during their unpaid meal breaks.

123. Throughout the relevant period, CHS paid Rivera and the FLSA Collective Members shift differentials and bonuses that it failed to include in calculating these employees' regular rates of pay for overtime purposes.

124. Rivera and the FLSA Collective Members have been harmed as a direct and proximate result of CHS's unlawful conduct because they have been deprived of wages owed for work that they performed and from which CHS derived a direct and substantial benefit.

125. CHS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Rivera and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked.

126. CHS's failure to pay Rivera and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision

not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

127. Accordingly, Rivera and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## SECOND CAUSE OF ACTION
## FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
## (NEW MEXICO CLASSES)

128. Rivera realleges and incorporates all other paragraphs by reference.

129. Rivera brings his NMMWA claim as a class action under Rule 23.

130. The conduct alleged herein violates the NMMWA. *See* NM STAT. § 50-4-20, *et seq.*

131. At all relevant times, CHS was, and is, an "employer" within the meaning of the NMMWA. *See* NM STAT. § 50-4-21(B).

132. At all relevant times, CHS employed Rivera and the New Mexico Class Members as "employees" within the meaning of the NMMWA. *See* NM STAT. § 50-4-21(C).

133. Section 50-4-22 of the NMMWA requires employers, like CHS, to pay employees, like Rivera and the New Mexico Class Members, overtime wages at rates not less than 1.5 times their regular hourly rate for all hours worked in excess of 40 hours in any seven-day period. *See* NM STAT. § 50-4-22(D).

134. Rivera and the New Mexico Class Members are entitled to overtime pay under the MWHL.

135. CHS violated, and is violating, Section 50-4-22 of the NMMWA by failing to pay Rivera and the New Mexico Class Members overtime compensation at the proper premium rate – based on all renumeration received – for all hours worked in excess of 40 in a seven-day period, including hours these employees work during their unpaid "meal breaks." *See* NM STAT. § 50-4-22(D).

136. Rivera and the New Mexico Class Members have been harmed as a direct and proximate result of CHS's unlawful conduct because they have been deprived of wages owed for work that they performed and from which CHS derived a direct and substantial benefit.

137. CHS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Rivera and the New Mexico Class Members overtime compensation at the proper premium rate for all overtime hours worked.

138. CHS's failure to pay Rivera and the New Mexico Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

139. Accordingly, Rivera and the New Mexico Class Members are entitled to recover their unpaid overtime compensation plus interest, treble damages in an amount equal to twice their unpaid wages, and attorney's fees, costs, and expenses. NM STAT. §§ 50-4-26(C) and (E).

## JURY DEMAND

140. Rivera demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Rivera, individually and on behalf of the Putative Class Members, seeks the following relief:

   a. An Order designating the FLSA Collectives as collective actions and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. An Order designating the New Mexico Classes as class actions pursuant to FED. R. CIV. P. 23;

c. An Order appointing Rivera and his counsel to represent the interests of the FLSA Collectives and New Mexico Classes;

d. An Order pursuant to Section 16(b) of the FLSA finding CHS liable for unpaid overtime wages due to Rivera and the FLSA Collective Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

e. An Order finding CHS liable to Rivera and the New Mexico Class Members for unpaid overtime compensation owed under the NMMWA plus interest, as well as for treble damages in an amount equal to twice their unpaid wages;

f. Judgment awarding Rivera and the Putative Class Members all unpaid compensation and other damages available under the FLSA and NMMWA;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: April 19, 2023.                    Respectfully submitted,

By: */s/ Michael A. Josephson*
    Michael A. Josephson
    TX Bar No. 24014780
    Andrew W. Dunlap
    TX Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    Richard J. (Rex) Burch
    TX Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    William C. (Clif) Alexander*
    TX Bar No. 24064805
    Austin W. Anderson*
    TX Bar No. 24045189
    **ANDERSON ALEXANDER PLLC**
    101 N. Shoreline Blvd., Suite 610
    Corpus Christi, Texas 78401
    361-452-1279 – Telephone
    361-452-1284 – Facsimile
    clif@a2xlaw.com
    austin@a2xlaw.com

*\*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**