# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

ABELINO RIVERA, Individually and for others
similarly situated,

       Plaintiff,

    v.                                      Case No. 2:23-cv-00336-KWR-KK

CHSPSC, LLC d/b/a/ COMMUNITY HEALTH
SYSTEMS and LAS CRUCES MEDICAL
CENTER, LLC d/b/a MOUNTAIN VIEW
REGIONAL MEDICAL CENTER,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Opposed Motion for Conditional Certification and Issuance of Court-Authorized Notice Pursuant to 29 U.S.C. §216(b) (**Doc. 33**), filed October 30, 2023. Defendants CHSPSC, LLC and Las Cruces Medical Center, LLC filed separate responses to the Plaintiff's motion on November 13, 2023. **Docs. 36; 37.** Having reviewed the parties' briefings and the relevant law, the Court **GRANTS** in part and **DENIES** in part the Plaintiff's motion to conditionally certify the collective and authorizes notice to the conditional class.

## BACKGROUND

Plaintiff Abelino Rivera brings a class and collective action under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA") against Defendants CHSPSC, LLC ("CHSPSC") and Las Cruces Medical Center, LLC ("Mountain View" or "MVRMC"). **Doc. 23**. Defendant Mountain View is a hospital center in Las Cruces, New Mexico, with seventy-two internal departments that employs over eight hundred clinical personnel. **Doc. 37-2 at 1-3**. Defendant CHSPSC is a Delaware limited liability corporation providing clinical,

operational, tax, financial, legal, and administrative services to hospitals nationwide, including MVRMC. **Doc. 36 at 2-3.** The Plaintiff, Mr. Rivera, worked as a respiratory therapist at MVRMC between February 2019 and February 2021. **Doc. 23 at 8.** Mr. Rivera alleges that the Defendants jointly employed him and other hourly non-exempt patient care workers at MVRMC, subjecting them to three timekeeping and payroll policies that did not fully compensate them for their overtime work, violating the FLSA and NMMWA. **Doc. 33 at 5.**

First, Mr. Rivera claims that the Defendants automatically deducted a thirty-minute meal period from the recorded work times of hourly, non-exempt patient care workers without ensuring that these workers were fully relieved from their duties during their breaks. **Doc. 33 at 6-8** (alleging that the supervisors discouraged non-exempt patient care workers from reporting that they did not receive a complete, FLSA-compliant meal break and failed to educate and inform them about how to request compensation for these work periods).[1] Second, Mr. Rivera alleges that he and other putative class members were subject to an automatic time-rounding policy—combined with an unwritten practice he calls the "7-minute rule"—that resulted in their total recorded work time being rounded down in the Defendants' favor. **Doc. 33 at 9.** Patient care workers at MVRMC must arrive fifteen minutes before the start of their shift to participate in safety huddles. **Docs. 23 at 10; 337 at 6; 33 at 9**. Mr. Rivera claims that the automatic rounding practice was applied non-neutrally because supervisors regularly pressured hourly patient care workers to wait to punch in six to seven minutes before their scheduled shift start time so that the hospital's timekeeping system discounts

---

[1] Through his Complaint and declarations from two other Mountain View patient care workers, the Plaintiff claims that (1) Defendants required patient care workers to remain attentive and vigilant to patient needs while on their meal breaks; (2) patient care workers had concurrent ethical obligations to ensure patient care that superseded any written policy established by the Defendants; and (3) the Defendants' policy or practice of automatically deducting thirty minutes frequently resulted in putative class members having meal breaks that were less than ten minutes long. *Id.; 23 at 9-12.* Declarants Rivera, Apodaca, and Medeiros allege that "meal periods were subject to interruption at all times and were virtually always less than 30 full minutes" and that this issue was widespread and a frequent topic of conversation in the hospital. **Doc. 33-1 at 2-3.** The Declarants further state that supervisors trained and expected them always to follow their ethical requirements towards patient care, meaning that they were required to be attentive and responsive to patient needs throughout their shifts, including during unpaid breaks. *Id.* **at 4.** *See also* **docs. 33-2; 33-3.**

their required pre-shift work. **Doc. 33 at 9.** Third, Mr. Rivera alleges that the Defendants' payroll system routinely underpaid him and other putative class members by failing to fully incorporate shift differential pay, COVID pay, non-discretionary bonuses, and other compensation into their regular rates of pay. *Id.* **at 10.**

Plaintiff moves for conditional class certification and court authorization of notice to a putative class that includes "all current and former hourly-paid, non-exempt patient care workers who worked at Mountain View Regional Medical Center and who either (i) received an automatic meal period deduction, (ii) whose recorded work time was rounded to the nearest 15-minute increments, and (iii) earned shift differentials, COVID pay, or nondiscretionary bonuses at any time from April 19, 2020 through <<60 days from mailing>>." **Doc. 34-1.** He also requests that notice be (1) posted conspicuously at MVRMC, (2) sent via postal mail, email, and text message, and (3) to authorize a 60-day deadline from the mailing to return the consent forms. *Id.*

## LEGAL STANDARD

The FLSA requires employers to pay covered employees who work longer than 40 hours in a given workweek "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). Any employer violating the minimum wage or maximum hours section of the FLSA "shall be liable to the employee or employees affected in the amount of the unpaid minimum wages or their unpaid overtime compensation" and any additional damages. 29 U.S.C. § 216(b).

Under the FLSA, an employee may bring a collective action for "similarly situated" employees. *Id.* The purpose of a FLSA collective action is to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and to benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged…activity." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). While the

term "similarly situated" is not defined in the statute, the Tenth Circuit has approved a two-tier "ad hoc" methodology to determine whether class members are similarly situated on a case-by-case basis. *See Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102–05 (10th Cir. 2001); *Flynn v. Colonial Management Group*, 2023 WL 7165194, at *3 (D.N.M. Oct. 31, 2023).

In the first step of certification—also called the "notice stage" or "conditional certification stage"—the trial court must determine whether the plaintiffs are similarly situated. *Thiessen,* 267 F.3d at 1102–03. At this stage, courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See id.* ("A plaintiff need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."). Thus, the burden at the notice stage is light and lenient. *See Medrano v. Flowers Foods, Inc.*, 2017 WL 3052493, at *3 (D.N.M. July 3, 2017) (explaining that while the "similarly situated" standard requires substantial allegations, the standard is "fairly loose initially, until discovery is completed").

To determine whether the potential class members are similarly situated, the trial court evaluates several factors, including (1) whether potential class members have the same employer, (2) are subject to the same employer practices, (3) suffer the same method of wage calculation, and (4) allege FLSA violations based on the same conduct. *See Landry v. Swire Oilfield Services, L.L.C.*, 252 F. Supp. 3d 1079, 1116-18 (D.N.M. 2017) ("In general, if proposed class members are employees with similar positions, courts hold that allegations that the defendants engaged in a pattern or practice of not paying overtime are sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan."); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th. Cir. 2008) ("[C]ourts determine whether employees are similarly situated—not whether their positions are identical."); *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1312 (D.N.M. July 25, 2017). "The sole consequence of [a FLSA] conditional certification is the sending court-approved written

notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (internal quotations and citations omitted).

While the Plaintiff's burden at the notice stage is light, it is not automatic; a plaintiff must present at least some evidence beyond unsupported factual assertions in the complaint, like sworn statements. *See Calvillo*, 267 F. Supp. 3d at 1312 ("The record need only be 'sufficiently developed' to allow court-facilitated notice based upon 'substantial allegations or some factual support."); *Landry*, 252 F. Supp. 3d at 1114–15. However, the court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims at the notice stage. *See Folger v. Medicalodges, Inc.*, 2014 WL 2885363 at *2 (D. Kan. Jun. 25, 2014); *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 908 (D. Kan. Mar. 2, 2021). The second step of the "ad hoc" method is the decertification stage; after discovery is complete, the Defendants may move to decertify the collective based on a stricter standard of "similarly situated." *See Thiessen*, 267 F.3d at 1102-03.

By statute, prospective class members must opt into a FLSA class action by consenting in writing. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The notice must include "accurate and timely notice concerning the pendency of the collective action so that [potential class members] can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170. When overseeing the notice process, the district courts must respect judicial neutrality so that the notice does not become a solicitation of claims. *Id.* at 174.

## DISCUSSION

Defendants MVRMC and CHSPSC raise separate challenges to the Plaintiff's motion for conditional certification. **See docs. 33; 36; 37**. For the reasons below, the Court finds that the

Plaintiff has met his burden for conditional certification at the notice stage based on the factual allegations made in his Complaint and the sworn declarations by himself, Rachel Apodaca, and Joshua Medeiros (the "Declarants"). *See Thiessen,* 267 F.3d at 1102–03; **docs. 23; 33; 33-1; 33-2; 33-3.**

### I.      Defendant Mountain View's Challenges to Conditional Certification

Defendant Mountain View challenges conditional certification of the class, arguing that Mr. Rivera has not demonstrated that Mountain View's timekeeping and payroll policies violate the FLSA. **Doc. 37 at 13** ("With that, Plaintiff has not established any justification for conditional certification because he has failed to identify an unlawful policy applied to him or other Mountain View employees. Mountain View's mealtime policies and procedures are not unlawful."). Mountain View also urges this Court to "reject the ad hoc approach or ask the Tenth Circuit to reconsider it" because the leniency of conditional certification amounts to an improper solicitation of claims. **Doc. 37 at 8, 10.** *See Hoffman-La Roche*, 493 U.S. at 174. Instead of the ad hoc approach, Mountain View endorses a more rigorous standard used in other circuits to certify FLSA collectives, where a plaintiff must prove that the putative class is "in fact" similarly situated through tested evidence. **Doc. 37 at 9.** *See Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430, 436, 440 (5th Cir. 2021); *Clark v. A&L Homecare & Training Ctr.*, 68 F.4th 1003, 1107 (6th Cir. 2023).

After the Tenth Circuit endorsed the "ad hoc" method, courts in this circuit have broadly adopted the two-step method for certifying a FLSA collective. *See Thiessen*, 267 F.3d at 1102; *Flynn*, 2023 WL 7165194, at *2-3; *Bustillos v. Bd. of Cnty. Comm'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 662-62 (D.N.M. 2018); *Landry*, 252 F. Supp. 2d at 1114-15. This Court does not see a reason to deviate from this long-standing method to certify a FLSA class or require plaintiffs to provide tested evidence before discovery is complete. *See id. Cf. Swales,* 985 F.3d at 436, 440; *Clark*, 68 F.4th at 1107. At this stage, the Court's inquiry is intentionally lenient and limited to whether the

Plaintiff has provided *some* evidence to establish that the putative collective members are victims of a single policy, decision, or plan. *See Thiessen*, 267 F.3d at 1102 (emphasis added). The Court finds that the Plaintiff has met his burden.

The Plaintiff's First Amended Complaint alleges that the Defendants violated the FLSA in three ways: (1) the automatic meal deduction policy, (2) the time-rounding policy, and (3) the Defendants' payroll policies that did not fully incorporate all relevant compensation when calculating the class members' regular rate of pay. **Doc. 33 at 13-21.** As factual support for these allegations, Plaintiff includes three sworn declarations by hourly, non-exempt patient care workers at MVRMC: (i) the Plaintiff, a respiratory specialist working in units throughout the hospital; (ii) a licensed practical nurse working in the hospital's heart and vascular unit, and (iii) a registered nurse working in the intensive care unit. **Docs. 33-1; 33-2; 33-3.** MVRMC attacks these declarations as false and lacking factual content and argues that the putative class includes dissimilar patient care workers working in different units, job functions, and rates of pay. **Doc. 37 at 15.**

The Court disagrees. These declarations provide sufficient factual basis for Plaintiff's allegations of common FLSA violations—made by patient care workers across multiple departments and with different titles and credentials—establishing that the Defendants applied the contested policies and practices systematically to all hourly patient care workers at MVRMC. ***See doc. 33-1 at 7*** ("Off-the-clock work was a fairly common problem at MVRMC and was not the result of one or a few rogue supervisors, but was commonly known to be a problem hospital-wide regardless of the specific patient care job duties performed or unit/department worked."); *Flynn*, 2023 WL 7165194, at *9 (collecting cases). These assertions are based on the Declarants' personal knowledge and observations.[2] **Doc. 33-2 at 6.** *See Kerr v. K. Allred Oilfield Services, LLC*, 2020

---

[2] "While employed by MVRMC, I observed other patient care workers doing the same or similar work as me. I also observed these employees working similar hours and frequently working more than 40 hours per week. I saw these employees being interrupted or pulled out of their unpaid meal breaks, and working before clocking in. From my

WL 6799017, at *4 (D.N.M. Nov. 19, 2020) (noting that courts in this district "routinely credit allegations based on observations and discussions with fellow workers and supervisors."); *Pogue v. Chisholm Energy Operating, LLC*, 2021 WL 5861184, at *6 (D.N.M. Dec. 10, 2021); *Calvillo*, 267 F. Supp. 3d at 1313. Under the "ad hoc" method for conditional certification's first step, these declarations provide sufficient factual support that the patient care workers were subject to a single policy or practice. *See Thiessen*, 267 F.3d at 1102; *Flynn*, 2023 WL 7165194, at *8-9; *Gray v. Delta County Memorial Hospital Dist.,* 2021 WL 13292673, at *1-2, 5 (D. Colo. Mar. 1, 2021).

The Plaintiff has demonstrated that the potential class of hourly non-exempt patient care workers at Mountain View share common characteristics and are sufficiently similarly situated for conditional certification. *See* § 216(b)*; Thiessen*, 267 F.3d at 1102; *Landry*, 252 F. Supp. 3d at 1116-1118; *Morgan*, 551 F.3d at 1260; *Calvillo*, 267 F. Supp. 3d at 1312. This Court assesses several factors to come to this conclusion: whether the potential class members have the same employer, are subject to the same employer practices, suffer the same method of wage calculations, and allege FLSA violations based on the same conduct. *See Landry*, 252 F. Supp. 3d 1116-18.

It is undisputed that the Plaintiff and potential class members were employed at the same MVRMC facility in Las Cruces, New Mexico. ***See* doc. 33-11; 37 at 3**; *Landry*, 252 F. Supp. 3d 1116-18*.* While it is true that the potential class members had different titles, rates of pay, credentials, and specific job responsibilities, they all share the same status as hourly, non-exempt workers with the primary responsibility of providing patient care at MVRMC. ***See generally docs. 33-1; 33-2; 33-3; 37***. *See Landry*, 252 F. Supp. 3d 1116-18*; Thiessen*, 267 F.3d at 1102. Accordingly, these patient care workers were bound by a common Code of Conduct, ethical guidelines and expectations relating to patient care, administrative practices and policies relating to

---

observations and discussions with these other workers throughout the hospital, I learned that these meal break deductions and off-the-clock work hours were a natural result of MVRMC s hospital-wide policies and practices." **Doc. 33-2 at 6. *See also* docs. 33-1 at 7; 33-3 at 7-8.**

reporting overtime work, timekeeping and payroll systems, and were obligated to clock in fifteen minutes before the start of their shift to ensure continuity of patient care. *See id; Landry*, 252 F. Supp. 3d 1116-18. Thus, contrary to Defendant's assertion, the Court does not find these job functions dissimilar.

Notably, Plaintiff alleges that the common timekeeping and payroll practices and policies did not accurately reflect the time that potential class members were working for overtime purposes, violating the FLSA.[3] *See Landry*, 252 F. Supp. 3d at 1120; *Pogue*, 2021 WL 5861184, at *4; *Cavillo*, 267 F. Supp. 3d at 1312 ("Plaintiffs need show only that their positions are similar, not identical, to the positions held by putative class members."). Plaintiff, therefore, has adequately described the shared attributes that made this putative class susceptible to Mountain View's FLSA violations. *See Bustillos*, 310 F.R.D. 631, 654-55. The Court now examines MVRMC's three alleged FLSA violations and its arguments that Plaintiff has not demonstrated that he and the other class members are similarly situated or subject to an illegal compensation policy. **Doc. 37 at 15.**

i.   Automatic Meal Deduction Policy

For the notice phase of class certification, the Plaintiff's Complaint and sworn declarations sufficiently allege that MVRMC automatically deducted thirty minutes from hourly non-exempt patient workers' recorded time without ensuring that these meal breaks were uninterrupted.[4] **Docs.**

---

[3] For example, through the Declarations, the Plaintiff alleges that other patient care workers "being interrupted or pulled out of their unpaid meal breaks," "working before clocking in," and that off-the-clock work was "commonly known to be a problem hospital-wide regardless of the specific patient care job duties or unit/department worked." **Doc. 33-1 at 7; 33-2 at 6; 33-3 at 5-6.** *See also* doc. 33-2 at 7 **("**Based on my experience working for Defendants at MVRMC, my experience working with and interacting with other workers at MVRMC, and my observation of Defendants policies and practices at MVRMC, all of Defendants hourly workers at MVRMC who received an automatic meal deduction and/or who were subject to Defendant s time-rounding and 7-minute rule are similarly situated. That is because these workers are all non-exempt, are paid by the hour, are subject to Defendants automatic time deduction and timekeeping policies, are taught only to request payment for meal periods under limited circumstances (if at all), and have the same ethical responsibilities to MVRMC s patients that requires them to remain attentive and responsive to patient needs during their attempted breaks.")

[4] In his declaration, Plaintiff stated, "Our supervisors knew that we were required to remain on-duty during our attempted meal breaks because they are well-versed and know that we to our ethical responsibilities to our patients. Our supervisors trained and informed us that we had to follow our ethical requirements at all times during our shifts and that we had to refrain from anything that might look like "patient abandonment." Our supervisors trained and informed us

**23 at 9** ("Instead, CHS and Mountain View require Rivera and Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including their unpaid meal periods."); **33-2 at 4** ("As a matter of practical reality, patient care workers like me have to be ready to intervene and help at all times during our shifts."). The Declarants attest that they were bound by Mountain View's Code of Conduct and pressured by supervisors to prioritize patient care, even during mealtime breaks. **Docs. 33; 33-1; 33-2; 33-3 at 4-5** ("[W]e are regularly required to skip our breaks, interrupt our breaks, or at the very least remain attentive and responsive to patient needs during our breaks…this was exacerbated because the hospital was severely understaffed…").

Defendant Mountain View provides its own evidence to refute Plaintiff's allegations that its automatic meal period deduction policy violated the FLSA, including (1) its timekeeping policy that describes its expectation that employees take uninterrupted thirty-minute meal breaks; (2) its established process to report a missed or shortened meal period; (3) the three Declarants' attestations that they understood that policy; and (4) evidence of 220 canceled mealtime deductions between 2019-2023. **Docs. 37 at 12-13; 37-2; 37-7.** MVRMC argues against conditional certification because the "Plaintiff has not established any justification for conditional certification," and the evidence shows that "Mountain View's meal time policies and procedures are not unlawful." **Doc. 37 at 13** ("Moreover, under the FLSA, if an employer established a reasonable process for an employee to report uncompensated work time, the employer is not liable if the employee fails to follow the established process.") (quoting *White v. Baptist Mem. Health Care*

---

that patient care came first, no matter what, which is in line with our ethical responsibilities to our patients. Despite knowing that we are required to remain attentive and responsive to our patients' needs during our entire shifts, including during unpaid breaks, our supervisors did not compensate us for our meal breaks and did not even inform us we could be compensated for on-duty meal breaks. **Doc. 33-1 at 4.** ***See also*** docs. 33-2 at 4; 33-3 at 4 ("As a matter of practical reality, patient care workers like me have to ready to intervene and help at all times during our shifts."). The other two Declarants made similar allegations. **Docs. 33-2; 33-3.**

*Corp.*, 699 F.3d 869, 873 (6th Cir. 2012)). *Cf. Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 760 (W. D. Tenn. Jan. 21, 2011); 29 C.F.R. § 785.48(b).

At this stage of litigation, MVRMC's evidence fails to stop conditional certification, as does its assertion that it should escape liability under the FLSA because the three Declarants did not follow its established process for reporting their interrupted meal periods. *See Thiessen,* 267 F.3d at 1102–03; *Calvillo*, 267 F. Supp. 3d at 1312; *Folger*, 2014 WL 2885363 at *2; **Doc. 37 at 13.** This Court is barred from weighing evidence, resolving factual disputes, or ruling on the merits of Mr. Rivera's claims at the notice stage. *See Calvillo*, 267 F. Supp. 3d at 1312; *Landry*, 252 F. Supp. 3d at 1114–15; *Folger*, 2014 WL 2885363 at *2. Therefore, the Court cannot assess the credibility of MVRMC's supporting evidence against the Plaintiff's sworn Declarations. ***See generally* docs. 33-1; 33-2; 33-3; 37-2; 37-4.**

Moreover, the Plaintiff is not simply challenging Mountain View's official automatic mealtime deduction policy; he also alleges that MVRMC had an unwritten practice of pressuring potential class members to remain alert to patient needs while on their breaks and did not compensate them for that time. **Docs. 33-1 at 3** ("Missed or interrupted breaks were also a commonly known problem and a frequent topic of conversation amongst staff throughout the hospital, and the supervisors surely heard about the unpaid break problem from multiple workers."); **33-2 at 2-3; 33-3 at 3.** *See Flynn*, 2023 WL 7165194, at *10 (quoting *Chapman v. Saber Healthcare Group, LLC*, 623 F. Supp. 3d 664, 675-676 (E. D. Va. Aug. 25, 2022) ("[A]n employer's expectation that employees remain on call during their meal breaks, in combination with an automatic meal break deduction policy, has been found to be sufficient to support conditional certification."); *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1253 (10th Cir. 2016) (explaining that a bona fide meal period is not considered to be work time and is therefore not compensable, but an "employee must be completely relieved from duty for the purposes of eating regular meals.").

Courts have also found that some auto-deduction policies violate the FLSA, specifically those that place the burden of correction on hourly workers when the employer permits or demands that employees continue to work during unpaid meal periods and where the employer discourages using time adjustment forms. *See Flynn*, 2023 WL 7165194, at *10; *Lindbergh v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 760 (W.D. Tenn. Jan. 21, 2011).

ii.   Time-rounding practices

Plaintiff's Complaint and sworn declarations also sufficiently allege that non-exempt patient care workers were subject to the same non-neutral uniform time-rounding policy, violating the FLSA. **Docs. 23 at 10** ("CHS and Mountain View also subject Rivera and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment to CHS's and Mountain View's—not these employees'— primary benefit.")**; 33 at 18.** Mountain View does not dispute that (1) healthcare workers across patient care departments were required to clock in fifteen minutes before their shifts started to participate in safety huddles, patient transfers, and prepare for their shifts and (2) the hospital's timekeeping system rounds employee hours worked to the nearest quarter hour. **Docs. 33-1 at 5-6; 37-3 at 2; 37-5 at 2; 37-6 at 2.**

Mountain View argues that time-rounding practices are not illegal under the FLSA and provides declarations and a representative sample of the Declarants' timesheets to prove that the time-rounding policy complies with the FLSA. **Doc. 37 at 15-16; 37-3 at 1; 37-4**; 29 C.F.R. §785.48(b). A time rounding policy is compliant under the FLSA as long as "it will not result, over a period of time, in failure to compensate the employees properly for all the time that they have actually worked" and must allow for rounding up and rounding down so that an employee is sometimes compensated for time not spent working, and sometimes not compensated for time spent working. 29 C.F.R. §785.48(b); *Aguilar v. Management & Training Corp.*, 948 F.3d 1270, 1287-88

(10th Cir. 2020). While the policy may be facially neutral—rounding up and down at the start and beginning of shifts—the Plaintiff is also challenging how the policy is applied. *See* **doc. 33 at 20-21; 33-1 at 5-6; 39 at 3** ("Moreover, Rivera's complaint is not with the [time-rounding] practice generally—just with [the Defendants'] unlawful implementation of it.").

For this initial stage, the Court finds that the Plaintiff has presented substantial allegations that the potential class members were subject to a single decision, policy, or plan: that they were instructed not to clock in immediately to their shifts so that the timekeeping system automatically rounded their recorded work time down. *See* **doc. 33 at 18**; *Thiessen*, 267 F.3d at 1103. All three Declarants claim that supervisors across departments "instruct workers like me not to clock in too early for our shift and instructs us only to clock in within 6-to-7 minutes of our scheduled start time." ***See, e.g.,* doc. 33-1 at 6.** Because these patient care workers are required to participate in pre-shift safety huddles by Mountain View policy, these activities are an essential part of their workday and are compensable. *See* **docs. 33-1 at 6 (**"Supervisors would warn us that we can get into trouble if we clock in too early, even though they see us at work getting ready for our day before we clock in and tell us it's just company policy that we're not supposed to clock in too early."**); 33-2 at 5; 33-3 at 5-6** ("[I]f hourly workers like me strictly follow the "7-minute rule," the time we work before our shift will virtually always be less than the half of fifteen minutes and would then be rounded down to zero in MVRMC's favor instead of rounding up to the nearest quarter hour in our favor."**)**; *Aguilar*, 948 F.3d at 1289.

The Court will not consider MVRMC's timesheet evidence at this stage because doing so would require this Court to determine the merits of the Plaintiff's claim about whether the policies violate the FLSA, how the automatic meal deduction and rounding process worked in practice, and how MVRMC calculated pay based on shift differentials. *See Calvillo*, 267 F. Supp. 3d at 1312; *Landry*, 252 F. Supp. 3d at 1114–15; *Folger*, 2014 WL 2885363 at *2. Thus, Plaintiff has

sufficiently alleged that there was a common practice that supervisors pressured patient care workers to clock in within seven minutes of the start of their shift despite arriving to work fifteen minutes before the start of their shift. ***See* doc. 33 at 9.**

   iii.  <u>Proper Calculation of Regular Rates of Pay</u>

Finally, the Plaintiff substantially alleges through his Complaint and the Declarations that hourly, non-exempt patient care workers were subject to a common payroll system and practices that did not incorporate all the components of their base pay—including shift differentials, bonuses, and other compensation—to calculate overtime pay. **Doc. 33 at 21.** Under the FLSA, overtime hours must be compensated at a rate not less than one and one-half times the regular rate at which the employee is employed, and the regular rate must include all remuneration for employment paid to or on behalf of the employee, with some exceptions. *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011); 29 U.S.C. § 207(e). Courts have certified classes because the regular rate of pay was not correctly calculated. *See, e.g., Hensley v. Carson Dev., Inc.*, 2020 WL 6384648, at *10 (D. Colo. July 31, 2020); *Chavez*, 630 F.3d at 1314; *Landry*, 252 F. Supp. 3d at 1121; *Calvillo*, 267 F. Supp. 3d at 1313.

The Plaintiff's Complaint alleges that "CHS and Mountain View paid Rivera and Putative Class Members different hourly rates ("shift differentials") and/or bonuses depending on what types of shifts they worked" and that the Defendants "failed to include these shift differentials and bonuses in calculating Rivera and the Putative Class Members' regular rate of pay for overtime purposes." **Doc. 23 at 10-11, 16-17.** Further, the Complaint alleges that Rivera and the putative class members abided by the same common work, time, pay, and overtime policies and procedures, and their wages were determined by common systems and methods that the Defendants selected and controlled. ***Id.* at 8.** The Plaintiff also provides his own Declaration and one other to allege that CHSPSC "implemented the payroll system and as in charge of issuing payroll at MVRMC" and that

the Defendants use "common and uniform formulas to calculate my and other hourly workers' regular rate of pay for the purposes of calculating overtime pay." **Docs. 33-1 at 6; 33-3 at 7.** The two Declarants also attest that based on the pay records provided to them by the Defendants, their regular rate did not appear to include shift differential pay, non-discretionary pay, and other compensation. *Id.*

Even though Mountain View contests this in its briefings and through the representative pay records attached as exhibits, this Court may not resolve factual disputes at this stage of litigation. *See* **Doc. 37 at 7** ("Employee pay statements … reflect all types of pay they receive including shift premiums (premium pay for certain shifts), overtime, call back pay, and bonuses. Different pay rates that might apply, such as a shift premium, are factored into an employee's overtime rate."); **37-4; 37-7.** The Plaintiff has sufficiently developed a factual record that allows this Court to determine that other similarly situated plaintiffs exist—that is, other hourly non-exempt patient care workers subject to a common payroll scheme that failed to incorporate their total remuneration into their regular pay rates. *Thiessen,* 267 F.3d at 1102–03.

## II. Defendant CHSPSC's Challenge to Conditional Certification

CHSPSC's challenges to the conditional certification of the potential class center around its argument that it did not jointly employ Plaintiff or any putative class member at MVRMC. **Doc. 36 at 2, 5, 7.** ("CHSPSC is not a joint employer with Mountain View."). CHSPSC argues that it does not (1) hire or fire MVRMC employees, (2) supervise or control MVRMC's employees' work schedules or conditions of employment, (3) determine the rate or method of pay for MVRMC employees, and (4) maintain employment records for MVRMC employees. *Id.* **at 5-6.** As evidence, CHSPSC includes declarations from administrators at both CHSPSC and MVRMC describing the relationship between the two entities. **Docs. 36-1; 36-2; 36-3.**

FLSA defines the "employ" expansively to mean "suffer or permit to work." 29 U.S.C. § 203(g); *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 326 (1992); *Falk v. Brennan*, 414 U.S. 190, 195 (1973). FLSA's statutory definition of an employer is also broad: any individual or entity that acts directly or indirectly in the interest of an employer concerning an employee. 29 U.S.C. § 203(d). "The striking breadth of these definitions stretches the meaning of employer to cover some parties who might not qualify as such under a strict application of traditional agency principles." *Johnson v. Unified Gov't of Wyandotte Cnty.*, 371 F.3d 723, 729 (10th Cir. 2004) (internal quotations and citations omitted).

The Tenth Circuit has yet to articulate a test for determining whether a person or entity is considered a joint employer under the FLSA. *See Barnett v. Vapor Maven OK 1, LLC*, 2022 WL 16950273, at *2 (N. D. Okla. Nov. 15, 2022); *Coldwell v. Ritecorp Env't Prop. Sols.*, 207 WL 1737715, at *5 (D. Colo. May 4, 2017). Courts in the circuit have used an economic realities test— not the presence of a legal or contractual relationship—to determine whether an alleged employer employed a worker.[5] This test considers the totality of the circumstances, including the degree of control exercised by the alleged employer over the worker, the worker's opportunity for profit or loss, the worker's investment in the business, the permanence of the working relationship, the degree of skill required to perform the work, and the extent to which the work is an integral part of the alleged employer's business. *Johnson*, 371 F.3d at 729; *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994). Notably, the analysis focuses on the relationship between the purported employer and the employee, not the legal relationship between the alleged joint

---

[5] Defendant CHS argues that this Court should consider the following four factors to determine whether entities are joint employers: whether the alleged employer (1) had the power to hire and fire employees; (2) supervisors and controls employee work schedules or conditions of employment; (3) determines the rate and method of payment; and (4) maintains employment records. **Docs. 42 at 5; 45 at 5.** While these factors were identified, a final Department of Labor rule entitled "Joint Employer Status Under the Fair Labor Standards Act" that took effect on March 16, 2020, was subsequently rescinded and reserved, effective September 28, 2021. 86 F.R. § 40939; 29 C.F.R. § 791. Therefore, this Court will apply the six-factor economic reality test described by the Tenth Circuit. *Baker v. Flint Engineering & Construction Co.,* 137 F.3d 1436, 1440 (10th Cir. 1998).

employers. *Harbert v. Healthcare Svcs. Grp., Inc.*, 173 F. Supp. 2d 1101, 1106 (D. Colo. Sept. 28. 2001).

At this stage of certification, the Plaintiff need only provide some evidence to establish a colorable basis showing that the putative class members are victims of a single decision, policy, or plan. *Pogue*, 2021 WL 5861184, at *2. Therefore, for Mr. Rivera to conditionally certify the class successfully, he must provide at least some evidence that CHSPSC exerted control over his employment. *Johnson*, 371 F.3d at 729; *Henderson*, 41 F.3d at 570. To make this determination, this Court looks to the record, including the Plaintiff's Complaint and sworn declarations, but will not weigh evidence, resolve factual disputes, or rule on the merits of the Plaintiff's claims at this stage. *See Landry*, 252 F. Supp. 3d at 1114–15; *Folger*, 2014 WL 2885363 at *2; *James,* 522 F. Supp. 3d at 908.

The Court finds that the Plaintiff has met his light burden to move past the notice stage. *See Thiessen*, 267 F.3d at 1102–03. In his Complaint, Plaintiff alleges that CHSPSC and MVRMC "jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of the putative class members." **Doc. 23 at 6.** The Plaintiff further alleges he and other putative class members performed their jobs under CHSPSC and Mountain View's supervision using materials, equipment, and technology approved of and supplied by CHSPSC and Mountain View and had common work, time, pay, and overtime policies and procedures in the performance of their jobs. ***Id.* at 8.**

The Declarants provide further details about the Plaintiff's claims that CHSPSC was involved in the operations and administration of MVRMC. ***See generally* docs. 33-1; 33-2; 33-3.** For example, the Declarants claim that (1) CHSPSC "implemented the payroll system and was in charge of issuing payroll" at MVRMC; (2) that "Defendants use common or uniform formulas to calculate my and other hourly workers' regular rate of pay;" (3) "[CHSPSC] wrote and

17

implemented [MVRMC's automatic meal deduction] policy" and selected and implemented

MVRMC's timekeeping system and policies which apply to all patient care workers at MVRMC;

(4) CHSPSC wrote and implemented the Code of Conduct that emphasized that patient care was a

top priority. **Docs. 33-1 at 7; Doc. 33-2 at 2, 4-5; 33-3 at 4, 6-7.**

The focus of this Court's determination for conditional certification is whether Plaintiff has

sufficiently alleged that CHSPSC jointly employed him under the six-factor economic realities test.

*Barnett*, 2022 WL 16950273, at *2; *Johnson*, 371 F.3d at 729; *Henderson*, 41 F.3d at 570. Plaintiff

has met his burden by alleging that CHSPSC exerted control over Plaintiff's work in myriad

ways—namely through CHSPSC's timekeeping and payroll policies and systems, expectations

about how potential class members should interact with patients, and training received by patient

care workers. ***See* docs. 23 at 6, 8, 11-12; 33-1 at 4-8; 33-2 at 3-7; 33-3 at 4-8**; *Johnson*, 371 F.3d

at 729. The class members were hired to provide patient care, work that is central to hospital centers

and healthcare delivery systems like CHSPSC. *Id.* The class members' opportunities for profit and

loss were largely controlled by CHSPSC and MVRMC: class members were paid hourly, scheduled

for 12-14-hour shifts, and compensated according to the Defendants' shift differential and bonus

pay scheme. ***See* docs. 23 at 7, 9-10, 11-12; 33-1 at 1-2; 33-2 at 1-2; 33-3 at 1-2**; *Henderson,* 41

F.3d at 570. These workers were also hired indefinitely—not on a project-by-project or independent

contractor basis, during which time they were subject to CHSPSC's alleged policies and practices,

indicating the permanence of the relationship, and the Defendants' investment in the putative class

members. ***See id.***; *Johnson*, 371 F.3d at 729. These alleged characteristics are common to all

putative class members: hourly, non-exempt patient care workers at MVRMC. *See Hoffmann-La*

*Roche*, 493 U.S. at 170 (1989). Despite having no formal legal relationship between CHSPSC and

Mr. Rivera (or any other putative class member), the totality of the circumstances and FLSA's

broad definition of an employer supports allowing conditional certification that includes CHSPSC.
*See* 29 U.S.C. § 203(d), (g); *Johnson*, 371 F.3d at 729; *Henderson,* 41 F.3d at 570.

    While the economic realities test is focused on the relationship between CHSPSC and Mr.
Rivera and the other potential class members, the record reflects an ongoing relationship in which
CHSPSC provides a wide range of services to MVRMC. *See Harbert*, 173 F. Supp. 2d at 1106. ***See,
e.g.,* docs. 33-6 at 1** (CHSPSC provides "services to hospitals and clinics indirectly owned by
Community Health Systems, Inc., including legal, compliance, accounting, operations, human
resources, information technology (IT), and health information management services."); **36 at 8**
("CHSPSC does not deny that it is an indirect subsidiary of Community Health Systems, Inc. two
entities removed. Mountain View is also an indirect subsidiary of Community Health Systems, Inc.,
six entities removed."); **33-7** (A management agreement describing CHSPSC and MVRMC as
affiliates of each other, with CHSPSC providing human resources consulting on wage and salary
administration). Given this well-documented affiliation between MVRMC and CHSPSC, the Court
is hesitant to limit the conditional class certification without fully understanding the relationship
between CHSPSC and MVRMC, the nature of services that CHSPSC provides to MVRMC, and
CHSPSC's level of involvement in the operations and personnel management at MVRMC. *See
Landry*, 252 F. Supp. 3d at 1114–15.

    Finally, while CHSPSC has provided its sworn declarations that it offers only "limited
consulting services" to Mountain View, this Court's inquiry at the notice stage is limited to whether
the Plaintiff made substantial allegations that the putative class members were together the victims
of a single decision, policy, or plan. **Doc. 36-1 at 3.** *See Thiessen*, 267 F.3d at 1102-3. Therefore,
the Court declines to address any arguments—including whether CHSPSC jointly employed Mr.
Rivera—that challenge the Plaintiff's claims on the merits. *See Landry*, 252 F. Supp. 3d at 1114–15;
*Folger*, 2014 WL 2885363 at *2; *James,* 522 F. Supp. 3d at 908. While the Plaintiff's allegations do

not, at this stage of litigation, strongly support that CHSPSC was heavily involved in the day-to-day management of MVRMC, the Plaintiff has plausibly alleged that CHSPSC was jointly engaged in the operations and administration of MVRMC. *See generally* **docs 23; 33; 39.** Through the Declarations and his Complaint, Plaintiff met his light burden that CHSPSC, in conjunction with MVRMC, extended common timekeeping and pay policies to all hourly, non-exempt patient care workers at MVRMC. **See** *id.; Thiessen*, 267 F.3d at 1102; *Landry*, 252 F. Supp. 3d at 1116-18. Therefore, the Plaintiff's motion to conditionally certify a FLSA class action against CHSPSC is granted.

### III. The Court Authorizes Notice and Modifies the Plaintiff's Notice and Consent to Join Forms.

In light of the Court's conclusion that conditional certification of this FLSA collective action is appropriate, Mr. Rivera may send notice of this lawsuit and opt-in forms to potential class members. *See Hoffman-La Roche*, 439 U.S. at 169-70; **docs. 33-11; 34-1.** MVRMC objects to several features of the Plaintiff's proposed notice form. **Doc. 37 at 19.** The Court approves the Proposed Notice and the length of the notice period, except for MVRMC's sustained objections described below. The Court authorizes notice via U.S. mail, email, text message, and physical copies of notice conspicuously posted in MVRMC's employee break rooms, along with one reminder at the midway point of the notice period. **Doc. 33 at 24-25.**

In its first objection, Mountain View mirrors its arguments against conditional certification, arguing that the Plaintiff has not shown that there are victims of an unlawful meal or rounding policy. **Doc. 37 at 19.** Alternatively, MVRMC asks this Court to limit the conditional class certification to current or former hourly patient care employees of the respiratory unit, the heart and vascular unit, and the intensive care unit—the three units in which the Declarants worked. *Id.* The Court has already determined that the Plaintiff has sufficiently demonstrated, for conditional certification, that he and other hourly, non-exempt patient care workers at MVRMC are similarly

situated. *See Thiessen*, 267 F.3d at 1102. Specifically, Plaintiff has sufficiently alleged, through the Declarations, that patient care workers across MVRMC were subject to common payroll systems and policies, mealtime deductions, pressure to be on call during unpaid breaks, ethical guidelines and expectations for patient care, and timekeeping systems. ***See generally* docs. 23 and 33.** The Defendant's objection is **OVERRULED**.

Second, Mountain View challenges the period covered by the notice—April 19, 2020 to the present—as the period covered by the notice. ***See* doc. 37 at 19.** "The text of the applicable statute, 29 U.S.C. § 256, states that an FLSA action is commenced with respect to the named plaintiffs on the date their complaint was filed, but that the action is commenced with respect to the unnamed opt-in plaintiffs when their opt-in consent is filed." *Zamora v. Sw. Glass & Glazing, Inc.*, 2016 WL 10516172, at *3 n.2 (D.N.M. Aug. 23, 2016); 29 U.S.C. § 256. Thus, "based on the statute of limitations, class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court." *Id.* at *3 n.2. "Courts in this district conditionally certify FLSA collective actions for the three years preceding the date of the court's order granting conditional certification, instead of the three years before the complaint's filing." *James*, 522 F. Supp. 3d 892, 899 n.3 (D. Kan. Mar. 2, 2021). *See also Pogue*, 2021 WL 5861184, at *9 (revising the proposed notice to measure the three-year limitations period from the issuance of the conditional certification order). The Defendant's objection is **SUSTAINED**, and the Plaintiff shall revise the proposed notice to measure the three-year limitations period from the date of the Court's issuance of this Order.

Third, MVRMC objects to the length of the Proposed Notice's paragraph that describes the Plaintiff's claims and the notice's one sentence describing Mountain View's position. **Docs. 34-1 at 2; 37 at 20.** While the paragraph is lengthy, it succinctly and neutrally describes the three FLSA violations alleged by the Plaintiff and the relief sought by the lawsuit. **Doc. 34-1 at 2.** The following

language represents Mountain View's position, "MVRMC denies the claims and maintains that it paid all of its hourly, non-exempt workers appropriately as required by federal law." *Id.* The Court **OVERRULES** the objection because the language accurately represents MVRMC's position, and MVRMC did not suggest alternative language that describes why it denies the Plaintiff's allegations.

Fourth, MVRMC objects to the Plaintiff's language in the proposed notice that states, "If this case is not successful, you will receive nothing and you will not be responsible for any of the case costs, expenses, or attorneys' fees." **Docs. 34-1 at 3; 37 at 20.** MVRMC argues that the FLSA does allow a prevailing defendant to recover costs, so this statement is untrue. **Doc. 37 at 20.** The Court agrees. "[B]ecause costs possibly could be awarded to the prevailing party, fairness and accuracy require that potential class members be informed of that possibility." *See Landry*, 252 F. Supp. 3d at 1128 (internal quotations and alterations omitted). However, to avoid discouraging participation in the lawsuit, the language in the notice must clarify that costs and expenses do not include Defendant's attorneys' fees. *Id.*; *Pogue*, 2021 WL 5861184, at * 10; *Wass v. NPC Int'l, Inc.*, 2011 WL 1118774, at *8 (D. Kan. Mar. 28, 2011) (ordering the inclusion of the following language in the notice, "If you do not prevail on your claim, court costs and expenses (not including [the defendant's] attorney fees) may possibly be assessed against you."); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 424 (W.D. Okla. Aug. 14, 2017). The Court **SUSTAINS** MVRMC's objection.

Fifth, MVRMC argues that the language in Section 6 of the Proposed Notice effectively says, "contact one of the Plaintiff's lawyers to get more information, but don't speak with Defendant's counsel." **Docs. 34-1 at 4; 37 at 20.** The Court disagrees. The language in the notice says, "If you decide to join this case, you should not contact the defendant's lawyer but instead rely on your counsel to do so. Any information you provide MVRMC or its attorneys may be used against you or the other workers who decide to join this case." **Doc. 34-1 at 4.** The Court agrees that this language protects

against unethical communications with a represented party and safeguards individual class members if they decide to join the case. *See Flynn*, 2023 WL 7165194, at *13; *Kerr*, 2020 WL 6799017, at *6. MVRMC's objection is **OVERRULED.**

Sixth, MVRMC requests that whatever notice is sent by email and text should conform with any limitations that the Court places on notice, to which the Plaintiff agrees. **Docs. 37 at 20; 39 at 10** ("Rivera will issue only the notices ordered by the Court."). "Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual." *See Calvillo*, 267 F. Supp. 3d at 1315; *Landry*, 252 F. Supp. 3d at 1129 (permitting notice by email, text, and mail); *Pogue*, 2021 WL 5861184, *9. MVRMC's objection is **SUSTAINED**; all forms of notice must comply with the limitations described herein.

## CONCLUSION

Based on the above, the Plaintiff's Motion for Conditional Certification is **GRANTED** in part and **DENIED** in part. This action is conditionally certified as a collective action under the FLSA. **IT IS THEREFORE ORDERED:**

(1) The parties **SHALL AMEND** the proposed notice and consent to join form in conformance with this Order.

(2) Plaintiff and Defendants **SHALL CONFER** regarding the proposed notice and consent form **within fourteen (14) days of the date of this Order**. If the revised notice and consent form are acceptable to the parties, the parties shall file a joint notice, which should be issued as soon as practicable. Before bringing any objections to the Court, the parties must attempt to resolve their disputes reasonably and promptly.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE